OPINION
Appellant C.L. Hendking appeals the decision of the trial court convicting him of burglary and two counts of robbery and sentencing him accordingly. Hendking assigns nine errors for our review.[1] Having reviewed the record and the legal arguments of the parties, we affirm Hendking's conviction, vacate his sentence, and remand the case to the trial court for resentencing. The apposite facts follow.
On December 8, 1997, Octavia Walker drove her son's car to Walgreens store on Chagrin and Lee Road. As she exited her car, she spotted two young men walking towards Chagrin. The two men stopped a few feet before reaching Chagrin, then turned around. Walker exited her car and entered Walgreens. When she returned to her car, she saw a young man later identified as Hendking walking behind her. She unlocked her car door and had just placed her purchases inside the car when the young man rushed towards her and grabbed her purse.
Walker struggled with the man for several minutes, then finally released her purse after suffering an arm injury. After taking the purse, the man said, "Lady, don't make me hurt you. Give me the car keys." At that time, Walker cursed and said that she was "not going out like that." Thereafter, a school bus turned the corner and illuminated Hendking's face with its headlights. Hendking then ran away with Walker's purse, which contained over eight hundred dollars. Walker drove home and called Shaker Heights police. She was informed that the officers could not leave the city to take her report and that she would have to come to the police station.
On December 16, 1997, eighty-two year old Lucille Cobb was returning home from the Walgreens store at Lee Rd. and Chagrin. She unlocked the security door to her home on Hildana Avenue and stepped inside. As she turned to lock the door, a man came inside, snatched her purse and ran away. She immediately called police and informed them that she had three dollars in quarters in her purse along with a five dollar bill and three one dollar bills.
A nearby gas station owner, Timothy Dzurilla, spotted a tall black male enter the side door of a house of Hildana, exit shortly thereafter, then run across a nearby field. Dzurilla watched as the man joined two other men — one of whom handed him a blue jacket. Dzurilla recognized the two other men as two suspicious men he saw earlier that evening across the street from the gas station.
Once inside his gas station, Dzurilla heard a police call on his scanner describing the Cobb robbery. Dzurilla flagged down a passing patrol car and told them about the two other men he saw along with the blue-jacketed robbery suspect. Shaker Heights police officers spotted three men walking on Kinsman Avenue and approached them. All three were patted down and the police officers felt a large bulge in Hendking's pants pocket.
Cobb and Dzurilla were called to the scene and Hendking was identified as the man who robbed her. Dzurilla stated that he was unable to identify the man's face, but recognized the blue jacket worn by Hendking as the type and color of jacket handed to the man he saw leaving the house on Hildana. During a search of the area, police recovered Cobb's purse behind the garage of a vacant house. Hendking and the other two males were arrested.
A subsequent search of Hendking revealed that his front pocket contained three dollars in quarters and a folded stack of cash containing a five dollar bill and three one dollar bills. Hendking's booking slip reflected that an additional $4.90 was seized from him at the time of his arrest.
Hendking was charged with burglary of Lucille Cobb in Shaker Heights Municipal court on December 17, 1997. After a preliminary hearing on December 24, 1997, Hendking was bound over to a Cuyahoga County grand jury. On January 30, 1998, Octavia Walker went to the Shaker Heights police station to file a police report about her robbery. On that date, Walker picked Hendking out of a photo-lineup as the man who robbed her.
On February 2, 1998, Hendking was indicted by a Cuyahoga County grand jury for burglary and robbery of Lucille Cobb in case number CR-358980. On March 9, 1998, Hendking was indicted for robbery of Octavia Walker in case number CR-360777. Over the objection of defense counsel, the two cases were merged for purposes of trial.
Hendking was convicted on all counts and sentenced to six years for robbery in CR-360777 and consecutive terms of four years for burglary and six years for robbery in CR-358980. This appeal followed.
In his first assignment of error, Hendking argues the trial court improperly sentenced him for both robbery and burglary of Lucille Cobbs when the two crimes were allied offenses of similar import under R.C. 2941.25. R.C. 2941.25(A) provides:
 Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
Offenses are of similar import when their elements correspond to such a degree that commission of one offense constitutes commission of the other offense. State v. Rance (1999), 85 Ohio St.3d 632,636; State v. Bickerstaff (1984), 10 Ohio St.3d 62,66. When a court decides whether two crimes are allied offenses, their elements should be considered in the abstract, rather than under the facts of the case. Rance at 636. (Citation omitted.)
Under R.C. 2911.02 (Robbery), no person shall have a deadly weapon on or about the offender's person or under the offender's control or inflict, attempt to inflict, or threaten to inflict physical harm on another in attempting or committing a theft offense or in fleeing immediately after the attempt or offense. R.C. 2911.12 (Burglary) prohibits a person from trespassing by force, stealth, or deception in an occupied structure when another person other than an accomplice of the offender is present, with purpose to commit in the structure any criminal offense.
Robbery and burglary have been held not to be allied offenses where the defendant trespasses into an occupied structure, then commits a theft once he is inside. In State v. Frazier (1979),58 Ohio St.2d 253, the Ohio Supreme Court held that a defendant may be convicted of both burglary and of a robbery committed after entry.
 The robbery and the burglary were committed separately. When the defendant forced the victims' door open with intent to assault Mrs. Dorr and take the victims' property, intentions fairly attributable to the defendant from the record, the burglary was completed. Whether an intended felony was committed is irrelevant to the burglary charge. * * * But where the intended felony is actually committed, a new crime arises for which the defendant may be convicted.
Frazier at 256. See also State v. Chapman (July 2, 1998), Cuyahoga App. No. 72532, unreported.
In this case, the crime of burglary was completed when Hendking entered Lucille Cobb's house with the intent to steal her purse. He committed the separate crime of robbery when he actually took the purse. Accordingly, the trial court did not err in convicting and sentencing him for both burglary and robbery. Hendking's first assignment of error is overruled.
In his second assignment of error, Hendking argues the trial court abused its discretion by failing to instruct the jury as to lesser included offenses and by failing to consider the relevant statutory criteria before imposing consecutive sentences upon him. Where the evidence presented by the defense, if believed, would constitute a complete defense to the crime charged, an instruction on a lesser included offense is only warranted where the jury could reasonably find for the accused on one or more of the elements of the crime charged, and against the accused on the remaining elements, which by themselves form the lesser offense.State v. Kutnar (Sept. 30, 1999), Lake App. No. 98-L-117, unreported; State v. Colquitt (Sept. 24, 1999), Clark App. No. 98-CA-71, unreported, citing State v. Wilkins (1980), 64 Ohio St.2d 382,388.
In this case, Hendking did not present any testimony in his defense. However, the questions asked of the prosecution witnesses by Hendking's trial counsel evidenced the defense's position that Hendking was misidentified as the perpetrator of the crimes charged. If the jurors believed that Hendking was misidentified, they could not reasonably convict him of any of the lesser included offenses of robbery and burglary. Accordingly, no instruction on lesser included offenses was warranted and the trial court did not err in failing to give such an instruction.
Hendking also argues that the trial court failed to consider the relevant statutory criteria before imposing consecutive sentences upon him. R.C. 2929.19(B)(2)(c) requires the trial court to "make a finding that gives its reasons for selecting the sentence imposed" if it imposes consecutive sentences. In Statev. Edmonson (1999), 86 Ohio St.3d 324, 329, the Ohio Supreme Court held that when an offender is given the maximum available sentence, "the record must reflect that the trial court imposed the maximum sentence based on the offender satisfying one of the listed criteria in R.C. 2929.14(C)." Although Edmonson did not involve consecutive sentencing, we join several other courts in concluding that its requirements should logically apply to situations in which the offender received consecutive sentences. See State v. Norman (Dec. 3, 1999), Hamilton App. No. C-980874, C-980872, unreported; State v. Eden (Nov. 17, 1999), Lorain App. No. 97CA006991, unreported; State v. Agner (Oct. 29, 1999), Allen App. No. 1-99-08, unreported.
In this case, when sentencing Hendking, the trial court failed to state its reasons under R.C. 2929.19 for imposing consecutive sentences. Accordingly, Hendking's second assignment of error is well taken. Hendking's sentence is hereby vacated and this case is remanded to the trial court for resentencing. See State v.Perkins (1994), 93 Ohio App.3d 672, 684, appeal dismissed (1994)70 Ohio St.3d 1425; State v. Beavers (Oct. 29, 1998), Cuyahoga App. Nos. 73569, 73570, unreported.
In his third assignment of error, Hendking argues that the trial court improperly denied his motion to remove his trial counsel based on alleged ineffective assistance of counsel and failed to advise him that he could continue with present counsel or represent himself.
An indigent defendant has the right to competent counsel but not to counsel of his own choosing. State v. Blankenship (1995),102 Ohio App.3d 534, 558, appeal dismissed (1995), 73 Ohio St.3d 1426
. See also United States v. Iles (C.A.6, 1990),906 F.2d 1122, 1130; Thurston v. Maxwell (1965), 3 Ohio St.2d 92, 93.
 The right to competent counsel does not require that a criminal defendant develop and share a "meaningful relationship" with his attorney. Morris v. Slappy
(1983), 461 U.S. 1, 13, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610, 621. Rather, an indigent defendant is entitled to the appointment of substitute counsel only upon a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result. State v. Pruitt (1984), 18 Ohio App.3d 50, 57 18 Ohio B. Rep. 163, 170-171, 480 N.E.2d 499, 507-508.
State v. Price (Oct. 29, 1998), Cuyahoga App. No. 73386, unreported. The decision about whether to allow substitution of counsel rests within the sound discretion of the trial court.State v. Dukes (1986), 34 Ohio App.3d 263, 265.
In this case, on the day of trial, Hendking attacked the competence of his trial counsel and requested another attorney. In denying his request, the trial court pointed out that Hendking's trial counsel had handled the case skillfully and concluded that Hendking's request for new counsel was made in an effort to delay the trial.
Our review of the record indicates that the trial court was correct in its assessment that Hendking's trial counsel competently handled his case. The prosecution had the eyewitness testimony of several witnesses implicating Hendking in the crimes charged. In addition to his vigorous cross-examination of the prosecution's witnesses at trial, the record reveals that Hendking's trial counsel filed pre-trial motions seeking to exclude potentially damaging evidence to Hendking's case. Our review of the record supports the trial court's conclusion that Hendking was competently represented. An indigent defendant must show good cause to warrant a trial court to substitute counsel.State v. Pruitt (1984), 18 Ohio App.3d 50, 57. Accordingly, we are unable to conclude that the trial court abused its discretion in denying Hendking's motion to appoint new counsel. Hendking's third assignment of error is overruled.
In his fourth assignment of error, Hendking argues he was denied his right to the effective assistance of counsel by his trial counsel's failure to object to prosecutorial misconduct, failure to use peremptory challenges to remove jurors closely related to police officers, failure to submit jury instructions as to lesser included offenses, and failure to request a presentence investigation.
In order to establish an ineffective assistance of counsel claim, Hendking must show that trial counsel's performance was so deficient that "counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment" and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial." State v. Rogers (April 14, 1999), Summit App. No. 19176, unreported, citing Strickland v.Washington, 466 U.S. at 687, 80 L.Ed.2d at 693. However, the conduct of trial counsel is strongly presumed to fall within the wide range of reasonable professional assistance. Strickland,466 U.S. at 689, 80 L.Ed.2d at 694. In order to establish that he was prejudiced by trial counsel's errors, a defendant must show that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. Calhoun
(1999), 86 Ohio St.3d 279, 289, citing Strickland,466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.
Hendking first attacks trial counsel's failure to object to objectionable statements made by the prosecutor during his opening and closing arguments. A prosecutor is given wide latitude during closing argument to present his most convincing positions. State v. LaMar (Aug. 13, 1998), Lawrence App. No. 95CA31, unreported; State v. McNeill (Apr. 1, 1997), Lorain App. No. 95CA006158, unreported, affirmed (1998), 83 Ohio St.3d 438. In order to constitute prosecutorial misconduct, the remarks must be improper, but also prejudicial to substantive rights of the defendant. State v. Mason (1998), 82 Ohio St.3d 144, 161, citingState v. Smith (1984), 14 Ohio St.3d 13, 14; State v. Ruiz (June 24, 1999), Cuyahoga App. No. 73645, unreported.
The failure of Hendking's trial counsel to object to improper comments by the prosecutor does not, in and of itself, constitute ineffective assistance of counsel. See State v. Holloway (1988),38 Ohio St.3d 239, 244, rehearing denied (1989), 44 Ohio St.3d 716
("Failure to object to error, alone, is not enough to sustain a claim of ineffective assistance.") A showing of ineffective assistance of counsel must include evidence that the defendant was prejudiced by the alleged errors of trial counsel. Hendking made no such showing in this case. The comments made by the prosecutor, even if determined to be improper, must be viewed in light of the other evidence presented against Hendking. We must also note that the jurors were instructed that the comments of the prosecutor and the defense attorney were not evidence and should not be considered by the jury in making its decision. Absent any evidence to the contrary, we must presume that the jury followed the trial court's cautionary instructions. See Pangv. Minch (1990), 53 Ohio St.3d 186, 187 at par. 4 of syllabus, rehearing denied (1990), 54 Ohio St.3d 716. Accordingly, trial counsel's failure to object to allegedly improper statements by the prosecutor does not constitute ineffective assistance of counsel.
Hendking also challenges trial counsel's failure to use peremptory challenges to remove jurors closely related to police officers. Decisions on the exercise of peremptory challenges are a part of trial strategy. State v. Goodwin (1999), 84 Ohio St.3d 331,341, reconsideration denied (1999), 85 Ohio St.3d 1410. The strategic choices of trial counsel are presumed to be sound.Strickland, 466 U.S. at 689. Though Hendking's trial counsel failed to challenge some jurors who were related to police officers, his decision must be viewed along with the jurors' assertion that they would not attach more credibility to the testimony of a police officer simply because he was a police officer. The evidence does not support a finding of ineffective assistance of counsel. See State v. Gowdy (June 6, 1998), Hamilton App. No. C-970359, unreported, discretionary appeal allowed (1999), 85 Ohio St.3d 1445, citing State v. Davis (1991),62 Ohio St.3d 326, 350 and Lakewood v. Town (1995), 106 Ohio App.3d 521,526, discretionary appeal not allowed (1996), 75 Ohio St.3d 1404.
Hendking also argues his trial counsel was ineffective for failing to submit jury instructions as to lesser included offenses. We disagree. As discussed above, in light of Hendking's mistaken identity defense, no instruction on lesser included offenses was warranted in this case. Accordingly, the failure to request such instructions did not constitute ineffective assistance of counsel.
Finally, Hendking argues trial counsel was ineffective for failing to request a presentence investigation. The record reveals that Hendking had an extensive criminal record and was, in fact, on parole for a prior robbery at the time of the offenses charged in this case. Under the circumstances, Hendking has failed to demonstrate how trial counsel's failure to request a presentence investigation was prejudicial to him. Hendking's fourth assignment of error is overruled.
In his fifth assignment of error, Hendking argues the trial court committed plain error by refusing to grant his motion for separate trials. "A defendant claiming error in the trial court's refusal to allow separate trials of multiple charges under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial." State v. Greene
(September 20, 1999), Fairfield App. No. 98CA71, unreported. See also State v. Coleman (1999), 85 Ohio St.3d 129, 136, reconsideration denied (1999), 85 Ohio St.3d 1481, citing Statev. Lott (1990), 51 Ohio St.3d 160, 163, certiorari denied (1990),498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596; State v. Torres
(1981), 66 Ohio St.2d 340 at syllabus.
We conclude that the trial court did not abuse its discretion in joining the cases for trial. The law favors joining multiple criminal offenses in a single trial. Coleman,85 Ohio St.3d at 136, citing State v. Franklin (1991), 62 Ohio St.3d 118, 122, certiorari denied (1992), 504 U.S. 960, 112 S.Ct. 2315,119 L.Ed.2d 235. A defendant's claim of prejudicial joinder can be overcome by evidence that the state could have introduced evidence of one offense in the trial of the other under the "other acts" portion of Evid.R. 404(B) or by demonstrating that evidence of each of the crimes joined at trial is simple and direct. State v. Williams (1995), 73 Ohio St.3d 153, 158, certiorari denied (1996), 516 U.S. 1161, 116 S.Ct. 1047,134 L.Ed.2d 193 (Citations omitted.) In this case, both robberies committed by Hendking involved snatching a purse from a woman who was alone at the time of the attack. Both victims were accosted shortly after leaving the same Walgreens store. The robberies took place just one week apart. Had the trials been conducted separately, evidence of the other robbery could properly have been admitted under Evid.R. 404(B) to show proof of a plan by Hendking to snatch purses from female Walgreens customers.
Furthermore, the state presented evidence directly linking Hendking to each crime. Walker positively identified Hendking as the man who robbed her. While the identification was less conclusive in the Cobb robbery, the state presented significant circumstantial evidence against Hendking from which a jury could reasonably conclude that he committed the offenses charged. Hendking has failed to demonstrate an abuse of discretion by the trial court or any resultant prejudice. Accordingly, we overrule his fifth assignment of error.
In his sixth assignment of error, Hendking argues the trial court erred by not requiring a presentence investigation or a victim impact statement. Crim.R. 32.2 provides that a presentence investigation shall be ordered before a trial court grants probation in felony cases. However, "a trial court is not required to order and consider a presentence investigation where probation is not granted." State v. Digrino (1995), 107 Ohio App.3d 336,341. See also State v. Cyrus (1992), 63 Ohio St.3d 164,166; State v. Rogers (April 14, 1999), Summit App. No. 19176, unreported.
R.C. 2947.05.1(A) requires the trial court to order the preparation of a victim impact statement if the defendant "caused, attempted to cause, threatened to cause, or created a risk of physical harm to the victim of the offense." Under R.C. 2947.05.1(B), the purpose of the statement is to inform the court about any economic loss and physical injury suffered by the victim as a result of the offense and to provide other information about the impact of the offense upon the victim.
However, a court need not request such a report where the record contains sufficient evidence from which to ascertain the effect of the crime upon the victim.
 It strikes us that in many cases that are within the broad sweep of R.C. 2947.05.1(A), a trial judge — having heard all of the testimony — will possess the information contemplated by R.C. 2947.05.1(B), so that preparation of a victim-impact statement will add little to the proceedings other than expense and delay.
State v. Garrison (1997), 123 Ohio App.3d 11, 17. See also Statev. Harris (Jun. 19, 1995), Mahoning App. No. 94 C.A. 63, unreported ("under the circumstances in this case, the testimony of the victim and the failure of appellant to raise the issue at the first instance in the trial court, though we find it error on the part of the trial judge in not requiring a victim impact statement, we do not conclude that the error was prejudicial.") In this case, both victims testified as to the effect of the robberies upon their lives. Consequently, despite the absence of a victim impact statement, the court had information about the effect of the crimes upon the victims in this case.
Furthermore, Hendking has not demonstrated that he was prejudiced by the trial court's failure to order a victim impact statement. See State v. Patterson (1996), 110 Ohio App.3d 264,268-269, appeal dismissed (1996), 76 Ohio St.3d 1493. In State v.Penix (Oct. 23, 1991), Scioto App. No. 90 CA 1887, unreported, the court pointed out that, generally, a victim impact statement works to the detriment of a criminal defendant and that such statements are frequently used to counteract mitigating evidence presented by defense counsel. In State v. Chandler (Nov. 4, 1998), Summit App. No. 18875, unreported, the court held that a trial court's failure to allow a victim impact statement at a defendant's sentencing hearing did not mandate reversal of the defendant's conviction.
 A defendant is not entitled to relief from his sentence when the trial court does not permit the victim of domestic violence to make a statement at the defendant's sentencing hearing. Chapter 2930 of the Ohio Revised Code is devoted to victim's rights, it explicitly provides that failure to grant the victim her rights does not create, in the defendant, a right to relief from the sentence imposed.
Chandler, citing State v. Ridenour (June 3, 1988), Summit App. No. 18633, unreported, and R.C. 2930.19(C). Accordingly, Hendking's sixth assignment of error is overruled.
In his seventh assignment of error, Hendking argues that comments made by the prosecutor during opening and closing arguments constituted prosecutorial misconduct. The test for prosecutorial misconduct is whether the challenged remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Cornwell (1999),86 Ohio St.3d 560, 570-571, citing State v. Smith (1984), 14 Ohio St.3d 13,14-15.
Because Hendking's trial counsel did not object to the prosecutor's remarks, we must review them under the plain error rule in order to determine whether "the error complained of seriously affects the fairness or integrity of the trial" and whether it must be reviewed by this court "to avoid a clear miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91,95, fn. 5. (Citations omitted.) See also State v. Fears (1999),86 Ohio St.3d 329, 332.
Our review of the transcript reveals that the challenged comments did not fall outside the range of permissible argument by the prosecutor. Even assuming, arguendo, that the comments were improper, Hendking has not demonstrated any resultant prejudice mandating reversal of his conviction. Hendking's seventh assignment of error is overruled.
In his eighth assignment of error, Hendking argues the state's decision to charge him with robbery and burglary, second degree felonies, instead of lesser charges, was the result of discriminatory enforcement. In order to show discriminatory enforcement, a defendant must show that "(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." City ofCleveland v. Trzebuckowski (1999), 85 Ohio St.3d 524, 530, citingState v. Flynt (1980), 63 Ohio St.2d 132, 134, certiorari dismissed (1981), 451 U.S. 619, 101 S.Ct. 1958, 68 L.Ed.2d. 489.
In support of this assignment of error, Hendking argues only that he could have been charged with lesser offenses. He makes no showing that the prosecutor's decision was based upon any impermissible consideration. Absent any evidence that the prosecutor's choice of charges was improperly motivated, we overrule Hendking's eighth assignment of error.
In his ninth assignment of error, Hendking argues his conviction was not supported by the weight and sufficiency of the evidence. When reviewing the sufficiency of evidence, we must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259 at paragraph two of the syllabus, rehearing denied (1991), 62 Ohio St.3d 1410. When reviewing the manifest weight of the evidence, we must "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created [such] a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins (1997), 78 Ohio St.3d 380, 387, reconsideration denied (1997), 79 Ohio St.3d 1451, citing Statev. Martin (1983), 20 Ohio App.3d 172, 175.
Our review of the evidence presented at trial reveals that Hendking's conviction was supported by sufficient evidence. The state presented evidence upon which the jury could reasonably conclude that each of the elements of the crimes of robbery and burglary were proved beyond a reasonable doubt. With respect to the burglary of Lucille Cobb, the evidence indicated that Hendking entered her home by stealth, for the purpose of stealing her purse. Timothy Dzurilla observed Hendking walk past Cobb's side door and look around as if to see if anyone was watching him. Hendking then quickly entered the home, snatched Cobb's purse from her grasp, and ran away across a nearby field. Once he encountered his associates, he immediately changed his jacket in an apparent attempt to disguise the clothing he was wearing at the time of the robbery. Though he could not positively identify Hendking as the man he saw running from the area of Cobb's house at the time of the robbery, Dzurilla identified the jacket worn by Hendking at the time of his arrest as the one worn by the male he saw fleeing the area. Cobb testified as to the amount and denominations of the money in her purse. The state established that, when he was arrested, Hendking had money in those same denominations upon his person. One of Hendking's associates told police where to find Cobb's purse and officers located the purse in that exact location.
With respect to the Walker robbery, the prosecution presented the testimony of Octavia Walker, who described a violent struggle with Hendking over her purse. After he obtained the purse, Hendking threatened to hurt Walker if she did not give him her car keys. Walker positively identified Hendking in a photo line-up as the man who stole her purse and threatened her.
The evidence presented by the state, if believed, would properly convince the jury of Hendking's guilt beyond a reasonable doubt. Furthermore, we cannot conclude that the jurors' resolution of the conflicts in the testimony created a manifest miscarriage of justice necessitating a new trial. Accordingly, we overrule Hendking's ninth assignment of error. Hendking's conviction is affirmed. However, his sentence is vacated and this case is remanded to the trial court for resentencing.
Judgment affirmed in part, vacated and remanded in part.
It is ordered that appellee and appellant share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, P.J., and JAMES D. SWEENEY, J., CONCUR.
 ___________________________________ PATRICIA A BLACKMON JUDGE
[1] See Appendix.
 APPENDIX
ASSIGNMENTS OF ERROR
 I. DEFENDANT WAS DENIED A FAIR AND JUST TRIAL GUARANTEED BY THE DUE PROCESS PROVISIONS OF ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION WHEN THE COURT REFUSED AT SENTENCING TO CONVICT DEFENDANT OF ONLY ONE OF TWO OR MORE ALLIED OFFENSES OF SIMILAR IMPORT PURSUANT TO 2941.25 AS TO COUNT ONE AND TWO WHICH RESULTED FROM THE SAME CONDUCT, VIOLATING THE DOUBLE JEOPARDY CLAUSE.
 II. THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING A PENALTY ON THE DEFENDANT FOR HAVING THE CASE TRIED BY A JURY AS EVIDENCED BY IT'S (sic) FAILURE TO CONSIDER THE RELEVANT STATUTORY SENTENCING CRITERIA BEFORE IMPOSING CONSECUTIVE SENTENCES AND FAILING TO INSTRUCT THE JURY AS TO LESSER INCLUDED OFFENSES DEFENDANT COULD BE CHARGED WITH.
 III. MR. HENDKING'S RIGHT UNDER ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WERE VIOLATED WHEN THE COURT DENIED THE MOTION TO REMOVE HIS INDIGENT COUNSEL BASED ON INEFFECTIVE ASSISTANCE, REFUSED TO APPOINT NEW COUNSEL, AND FAILED TO ADVISE HIM THAT HE COULD PROCEED WITH CURRENT COUNSEL OR REPRESENT HIMSELF AS PERMITTED BY THE SIXTH AMENDMENT.
 IV. MR. HENDKING WAS DENIED HIS RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN HIS ATTORNEY FAILED TO OBJECT TO PROSECUTORIAL MISCONDUCT, DID NOT USE HIS PREEMPTORY (sic) CHALLENGES TO REMOVE JURORS CLOSELY RELATED TO LAW ENFORCEMENT OFFICERS, FAILED TO SUBMIT JURY INSTRUCTIONS AS TO LESSER INCLUDED OFFENSES, AND FAILED TO REQUEST A PRESENTENCE REPORT.
 V. THE TRIAL COURT COMMITTED PLAIN ERROR BY REFUSING TO GRANT DEFENSE MOTION FOR SEPARATE TRIALS, THEREBY JOINING TWO UNRELATED CASES RESULTING IN ONE JURY HEARING FACTS AND CIRCUMSTANCES AS TO TWO SEPARATE CHARGES WHICH BASED ON THE ENTIRE RECORD INFLUENCED THE JURY AND SUBSTANTIALLY AFFECTED THE OUTCOME, AS IT WAS NOT CLEAR DEFENDANT WOULD HAVE BEEN CONVICTED WITHOUT THAT EVIDENCE.
 VI. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY NOT REQUIRING A PRESENTENCE INVESTIGATION OR VICTIM IMPACT STATEMENT.
 VII. PROSECUTORIAL MISCONDUCT WAS PREJUDICIAL TO DEFENDANT WHEN OPENING AND CLOSING ARGUMENTS FAILED TO BE CONFINED TO THE RECORD EVIDENCE AND THE INFERENCES THAT CAN BE REASONABLY AND FAIRLY DRAWN.
 VIII. PROSECUTOR'S DECISION TO CHARGE DEFENDANT WITH ROBBERY AND BURGLARY IN THE SECOND DEGREE RATHER THAN OF THE LESSER CHARGES ARE (sic) THE RESULT OF DISCRIMINATORY ENFORCEMENT.
 IX. DEFENDANT WAS DENIED A FAIR AND JUST TRIAL GUARANTEED BY THE DUE PROCESS PROVISIONS OF ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION WHEN THE CONVICTION WAS NOT SUPPORTED BY THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE.